HARVEY BROTHERS, demandante y apelada, *v.* R. SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7662.—*Sometido:* Abril 26, 1939. *Resuelto:* Marzo 8, 1940.

Hon. Procurador General George A. Malcolm (B. Fernández García en el alegato y en la vista) y M. Rodríguez Ramos, Procurador General Auxiliar, abogados del apelante; Alfonso Miranda Esteve, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La sociedad demandante reclama en cuatro distintas y separadas causas de acción la devolución de ciertas cantidades pagadas por ella al Tesorero de Puerto Rico, bajo protesta, por concepto de contribuciones sobre el ingreso neto de la demandante durante los años 1928, 1929, 1930 y 1931.

En la primera causa de acción se alega que el Tesorero fijó el ingreso neto de la demandante para el año 1928, en $12,572.43 y la contribución por tal concepto en $1,571.55; que la demandante pagó el importe de dicha contribución, más $651.04 por intereses, o sea un total de $2,222.59; que el cobro de dicha suma es erróneo, excesivo e ilegal:

(a) Porque el demandado rechazó la pérdida de $26,000 que la demandada alega haber sufrido en sus plantaciones de cocos, como

consecuencia del ciclón de 13 de septiembre de 1928; y se negó a aceptar la reducción de $6,600 en los ingresos brutos de 1928, que por razón de dichas pérdidas le concedió a la demandante la Junta de Revisión e Igualamiento.

(b) Porque el demandado le ha concedido a la demandante solamente $850 como deducción anual por cada uno de los años 1928 a 1931, por concepto de depreciación del ganado vacuno, o sea el 16⅔ por ciento sobre $5,100 en que erróneamente se fijó el valor del ganado, cuando debió concederle una reducción anual de $1,715.60, que es el 16⅔ por ciento de $10,300, valor en tasación del ganado vacuno.

(c) Que aun aceptando la suma de $12,572.43 como el verdadero ingreso neto de la demandante, ésta tendría derecho "a una deducción de sus ingresos brutos de $5,000, concedido por la sección 34 de la Ley núm. 74 de 1925 (pág. 401) por ser inconstitucional y nula y por lo tanto sin valor ni efecto legal alguno la sección 6 de la Ley núm. 18 de 1927 (pág. 487)."

(d) Que aun asumiendo que la demandante no tuviera derecho a la deducción de $26,000 por daños a los cocos y que la Ley núm. 18 de 1927 fuese constitucional, si se resta de los $12,572.43 fijados por el Tesorero como ingreso neto de 1928 la suma de $6,600 concedida por la Junta como deducción por daños a los cocos, el ingreso tributable resulta ser menor de $10,000, lo que daría a la demandante el derecho al crédito específico de $3,000 concedido por la sección 34 de la Ley núm. 18 de 1927 (pág. 487).

La demandante reclama la devolución de la suma de $2,222.59 pagada bajo protesta.

En las otras tres causas de acción se hacen iguales alegaciones y se reclaman, respectivamente, $360.62 pagados sobre un alegado ingreso neto de $2,138.39 en 1929; $171.53 sobre un ingreso neto de $1,068.19 en 1930; y $953.78 sobre un alegado ingreso neto de $6,253.58 durante el año 1931.

La contestación del demandado consta de 23 páginas. Para mayor brevedad reproduciremos el resumen que de sus alegaciones hizo la corte inferior:

"La contestación del Tesorero, que es bastante extensa, acepta en general los hechos, pero niega, en cuanto a la primera causa de acción, que la actora tuviera pérdidas en su plantación de cocos, y que el valor razonable de tales pérdidas fuera el de $26,000, ni

tampoco que rechazara tal deducción, y alega en contrario, que la demandante radicó en el Departamento de Hacienda su declaración de ingresos en la que reclamó como una deducción de su ingreso bruto la suma de $5,000 por concepto de pérdidas en el cosecho de cocos por el año 1928, a consecuencia del ciclón del 13 de septiembre; que el entonces Tesorero eliminó la partida reclamada por no constituir la misma una pérdida deducible y sí un ingreso que la demandante no llegó a realizar; que la actora no apeló para ante la Junta de Revisión e Igualamiento de esta decisión del Tesorero, sino que la aceptó; que estando el caso en apelación ante la Junta, la demandante reclamó por primera vez una deducción por $26,000, alegando que dicha suma era el valor razonable de 5,300 palmas de coco que fueron destruídas por el ciclón del 13 de septiembre de 1928; que la Junta de Revisión e Igualamiento admitió como una deducción del ingreso bruto la suma de $6,600 por pérdida en palmas de coco destruídas por el temporal, y que el entonces Tesorero no admitió la decisión de la Junta, siendo tal actuación 'ilegal, nula e ineficaz en derecho, porque fué dictada por la Junta en exceso de su jurisdicción, por cuanto dicha reclamación se planteó originalmente ante la Junta y no ante el entonces Tesorero de Puerto Rico, don Manuel V. Domenech, y lo fué a virtud de petición de reconsideración que se radicó ante dicho organismo y no en la oficina del Tesorero de Puerto Rico, todo ello en violación de la sección 76(b) de la Ley de Contribución sobre Ingresos.'

"En cuanto a la deducción del ingreso bruto por concepto de depreciación del ganado vacuno, niega el Tesorero que el valor de dicho ganado de la demandante sea de $10,300, ni que tenga derecho a deducir la cantidad de $1,715.60; alegando en contrario que en el año 1928 la demandante no llevaba libros de contabilidad de clase alguna que pudiesen reflejar el valor de su ganado; niega que la suma de $10,300 represente el valor en tasación a los fines de la contribución sobre las 52 vacas propiedad de la demandante que utilizaba en su negocio de lechería, y alega que la suma de $850 concedida como depreciación por el ganado vacuno fué computada a base del valor en tasación de dicho ganado, menos el valor estimado del mismo al vencimiento de su período de utilidad.

"En cuanto a la deducción por créditos concedidos por la sección 34(b) de la ley de 1925, el Tesorero alega que si se dedujesen los $6,600 concedidos por la Junta de Revisión e Igualamiento, el ingreso tributable de la demandante sería menor de $10,000, y tendría derecho al crédito específico de $3,000 que autoriza la ameritada

sección de la ley de contribuciones sobre ingresos; pero que como la resolución de la Junta fué dictada en exceso de su jurisdicción, según antes alega, no puede hacer deducción o concesión de crédito alguno.

"Las demás negativas de la contestación giran alrededor de este mismo tema, y alega como defensas especiales: 1, que no habiendo la demandante ni en su declaración de ingresos ni en su alzada ante la Junta reclamado la pérdida neta que sufrió en las operaciones del año 1928, no tiene derecho ni causa de acción para reclamar deducción alguna por este concepto, ya que no acudió ni agotó la vía administrativa antes de recurrir a la vía judicial; y 2, que por tales motivos la demandante está impedida de plantear esta reclamación ante la corte y está asimismo impedido el tribunal de conocer de la misma y de concederla o negarla por carecer de jurisdicción."

La Corte de Distrito de San Juan dictó sentencia declarando con lugar la demanda y ordenando la devolución a la demandante de cualquiera cantidad que le haya sido erróneamente cobrada, con sus intereses, más las costas, sin incluir honorarios. El Tesorero apelante imputa a la corte inferior la comisión de cinco errores, los que pasamos a exponer y discutir en el orden de su señalamiento.

■ *Declarar que la demandante tenía derecho a la deducción de $6,600 concedídale por la Junta de Revisión e Igualamiento por concepto de la alegada destrucción de palmas de coco.*

En la planilla radicada por la demandante para el año 1928, se solicitó una deducción de $5,000 *por pérdidas en la cosecha de cocos, causadas por el ciclón* ocurrido ese mismo año. El Tesorero se negó a admitir la deducción. Acudió la demandante en alzada ante la Junta de Revisión e Igualamiento y allí reclamó una deducción de $26,000 *por concepto de pérdida en el valor de palmas de coco destruídas por el ciclón* de San Felipe en 1928. La Junta concedió una deducción de $6,600. El Tesorero se negó a aceptar dicha deducción, alegando que la Junta actuó fuera de su jurisdicción al concederla.

No hay duda alguna en cuanto a las pérdidas sufridas por la demandante. La evidencia demuestra que el ciclón

le destruyó 5,300 palmas, de un valor de $5 cada una, o sea un total de $26,500.

El apelante plantea en su alegato estas dos cuestiones:

(a) Que la Junta no puede conocer originalmente de cuestión alguna relacionada con la imposición de contribuciones sobre ingresos, si no ha sido considerada y resuelta previamente por el Tesorero de Puerto Rico.

(b) Que la Corte de Distrito no puede conocer de cuestión alguna que no haya sido planteada ante el Tesorero mediante su inclusión en la planilla y que no haya sido sometida a la Junta para su consideración como uno de los fundamentos de la alzada.

En apoyo de sus contenciones el apelante cita los casos de *Ríos* v. *Richardson*, 24 D.P.R. 547, y *P. R. Fertilizer Co.* v. *Domenech*, 49 D.P.R. 45.

En el primero de dichos casos se resolvió que el contribuyente que ha pagado contribuciones bajo protesta no puede acudir ante los tribunales en demanda sobre devolución de las sumas pagadas, cuando apareciendo que la Junta de Revisión e Igualamiento tenía jurisdicción para revisar la tasación, no consta que se hubiese recurrido a ella administrativamente.

En el segundo caso citado, la Porto Rico Fertilizer Co., como agente retenedor de una corporación de Estados Unidos, pagó sin protesta contribuciones sobre ingresos que le fueron cobrados por el Tesorero. Más tarde solicitó del Tesorero le devolviese las sumas pagadas, alegando que le habían sido cobradas erróneamente. Negóse el Tesorero a devolverlas y entonces la contribuyente demandó al Tesorero ante la Corte de Distrito de San Juan. Sostuvo dicha corte la excepción previa de falta de causa de acción, declarando que no podía ordenar la devolución porque los pagos no fueron hechos bajo protesta y porque la contribuyente debió apelar la negativa del Tesorero para ante la Junta de Revisión e Igualamiento, antes de que pudiera acudir a los tribunales de justicia. Apeló la contribuyente ante esta corte, sosteniendo que no tenía el deber de pagar bajo pro-

testa, ni tampoco el de apelar para ante la citada Junta. Esta corte, interpretando las secciones 75 y 76, apartados (a) y (b) de la Ley núm. 74 de 1925 (pág. 401), que es la de contribuciones sobre ingresos, resolvió:

"La misma ley en su sección 76 y bajo el epígrafe 'Limitación de pleitos y procedimientos entablados por el contribuyente' dispone en su apartado (a) que las resoluciones de la Junta de Revisión e Igualamiento serán finales sin perjuicio de su reconsideración con arreglo a la ley, y que el contribuyente deberá satisfacer bajo protesta toda la contribución que le haya sido impuesta dentro del plazo fijado, pudiendo interponer dentro de los treinta días siguientes al pago bajo protesta demanda contra el Tesorero de Puerto Rico ante la Corte de Distrito correspondiente. Ese plazo de treinta días fué ampliado por la Ley núm. 8 de 1927 a un año. El apartado (b) de dicha sección 76 dispone que ningún pleito o procedimiento será declarado con lugar por ningún tribunal, cuando fuere entablado para recuperar una contribución sobre ingresos o beneficios excesivos que se alegare fué impuesta o cobrada errónea o ilegalmente, o para recuperar cualquier penalidad pecuniaria que se alegare fué cobrada sin autoridad, o para recuperar cualquier suma que se considerare excesiva o erróneamente cobrada por cualquier motivo, hasta que debidamente se haya presentado al Tesorero y en apelación ante la Junta de Revisión e Igualamiento una reclamación de reintegro o crédito, según lo establecido por la ley en ese sentido, y por los reglamentos dictados de acuerdo con dicha ley. El alcance de dichos apartados es que la contribución sobre ingresos debe ser pagada bajo protesta para poder reclamar su devolución, y el pleito contra el Tesorero establecido dentro de un año, pero que dicho procedimiento no será declarado con lugar por el tribunal a menos que habiéndose efectuado el pago bajo protesta se haya presentado al Tesorero y en apelación ante la Junta de Revisión e Igualamiento, antes o después de dicho año, una reclamación de reintegro. Ya hemos dicho antes que en el presente caso no se hizo el pago bajo protesta, como debió haberlo sido.

"Por otra parte, era necesaria la apelación por la apelante ante la Junta de Revisión e Igualamiento de la resolución del Tesorero que negó la devolución que se le pidió. Las palabras de la ley sobre apelación ante la Junta de Revisión e Igualamiento son bastante explícitas para concluir que concedieron una apelación ante la Junta. Tal apelación no fué hecha."

En el caso de autos hubo una imposición de la contribución por el Tesorero, una alzada para ante la Junta y un pago bajo protesta, antes de que se radicara la demanda ante la corte inferior. No vemos que sea de aplicación lo resuelto por este tribunal en los dos casos citados.

 La contestación a la primera cuestión planteada por el apelante, o sea si la Junta está facultada para conocer de una cuestión que no ha sido considerada y resuelta previamente por el Tesorero, la encontramos en el texto de la ley que crea la Junta de Revisión e Igualamiento y define sus facultades y obligaciones. Los artículos 308 y 310 del Código Político, según fueron enmendados por la Ley núm. 75 de agosto 2, 1923, ((1) pág. 605), en lo que es pertinente leen así:

"Art. 308.—Con el propósito de revisar la tasación y retasación de la propiedad mueble e inmueble, según por este título se dispone *y con el fin de resolver todas las reclamaciones que presenten los contribuyentes con referencia a* la tasación de sus bienes e *imposición de contribuciones* sobre la propiedad y sobre ingresos, habrá en el Departamento de Hacienda, una Junta permanente de revisión e igualamiento, etc...'.

"Art. 310.—La citada Junta de Revisión e Igualamiento se reunirá en sesión ordinaria . . . . En ella se oirán las apelaciones recibidas y resolverá cualquier cuestión que se presentare y que se relacione con la mayor o menor cantidad en que puede tasarse una propiedad para imponerle las contribuciones o con el importe de éstas, o para exceptuarla de contribuciones, *o bien para fijar la contribución sobre ingresos de cualquier contribuyente;* y al hacer constar dicha resolución, corregirá las planillas y liquidará la contribución a imponer en las declaraciones de ingresos presentadas de acuerdo con lo que se haya decidido y lo comunicará al Departamento de Hacienda para las correcciones, cancelaciones o expedición de recibos según corresponda. *La junta tendrá poder para suprimir, disminuir o aumentar las valuaciones hechas en cualquier planilla que le haya sido enviada, háyase presentado o no queja alguna con relación a la misma;* y para decidir toda otra queja con respecto a la imposición de contribuciones sobre la propiedad y sobre ingresos *y para corregir todos los errores que haya a medida que se le indiquen.*"

En el caso de autos la contribuyente reclamó una deducción de $5,000 por pérdida de la cosecha de cocos. Al serle denegada por el Tesorero apeló para ante la Junta, haciendo constar que el Tesorero no tomó en consideración que la contribuyente tuvo pérdidas considerables por la destrucción de palmas de coco. Procedió la Junta a considerar y resolver la cuestión planteada, o sea la de si la contribuyente tenía o no derecho a deducción alguna por concepto de pérdidas sufridas como consecuencia del ciclón de San Felipe. Las facultades que el estatuto concede a la Junta son claras y amplias. Cuando una planilla es enviada a la Junta para su revisión, en alzada contra la resolución del Tesorero, la Junta está facultada para suprimir, aumentar o disminuir las valuaciones hechas por el Tesorero, sin que sea requisito esencial el de que se haya presentado una queja específica sobre el particular. El espíritu de la ley es abrir el caso de nuevo ante la Junta, para que ésta haga una amplia y detenida investigación de todas las cuestiones que le sean sometidas y dicte una resolución justa para las partes contendientes, que proteja al contribuyente contra exacciones ilegales del fisco y a éste contra ocultaciones de ingresos tributables.

No llegaremos hasta el punto de sostener que un contribuyente pueda reclamar por primera vez ante la Junta una deducción enteramente nueva, con respecto a la cual nada dijo al Tesorero. Pero, cuando como en el caso presente la petición formulada ante el Tesorero y la formulada ante la Junta son, si no idénticas, germanas, por referirse una y otra a pérdidas originadas por una misma causa, el ciclón de San Felipe, y en el mismo negocio, opinamos que la Junta de Revisión e Igualamiento tiene facultad y jurisdicción para conocer del caso.

■■ *Que la corte inferior erró al declarar que la Junta cometió error al conceder a la demandante deducción por depreciación, en cantidad de $850 computados sobre $5,100, valor del ganado vacuno; y al declarar, además, que la deducción por depreciación de dicho ganado debió ser computada a base de un valor de $10,300.*

De la planilla radicada por la demandante para el año 1928 (*Exhibit* 1 del demandado) aparece que la demandante solicitó una deducción de $4,200 por concepto de depreciación de 75 vacas lecheras, 2 toros y 3 caballos.

De la planilla para 1927–1928 (*Exhibit* 19 del demandado) que sirvió de base al Tesorero para imponer contribuciones a la propiedad de la demandante para el año económico 1927–1928, y que estuvo vigente hasta el año 1932–33, aparece que la demandante era dueña de 52 vacas valoradas en la suma de $10,300.

Habiéndose negado el Tesorero a conceder la deducción solicitada por depreciación del ganado, en septiembre 10, 1934, la demandante acudió en alzada ante la Junta de Revisión e Igualamiento. En el escrito de alzada (*Exhibit* 8 del demandado) presentado a la Junta se alega que al concederse la depreciación a que tiene derecho la demandante no se le concedió cantidad alguna por concepto de depreciación del ganado vacuno.

La Junta, después de considerar el asunto, acordó admitir como deducción del ingreso bruto la cantidad de $850 para cada uno de los cuatro años, 1928 a 1931, "que representa una depreciación de 16⅔ por ciento sobre $5,100, valor tasado del ganado vacuno." (*Exhibit* 9 del demandado.) La corte inferior al resolver esta cuestión se expresó así:

"En cuanto a la valoración del ganado vacuno, la prueba del Tesorero (véase exh. núm. 19, que es la planilla para el año 1927–28 de contribuciones sobre la propiedad), comprende dentro de la propiedad de la contribuyente y bajo el concepto de ganado vacuno, 52 vacas con un valor por la contribuyente de $10,300, que fué aceptado por el Tesorero. Si éste impuso una contribución sobre la propiedad, tomando como base el valor declarado de la misma por la contribuyente en su planilla rendida, no puede (el Tesorero) rebajar después esa valoración, a menos que exista alguna causa indicativa de fraude o de que tal propiedad fué tasada de modo exagerado y para fines de afectar una contribución posterior. Sabido es que a mayor tasación mayor contribución. En este caso no hay alegación alguna de fraude, y mucho menos indicios de prueba de

que tal fraude se cometiera. No puede, a nuestro juicio, ir el Tesorero contra sus propios actos, y la cantidad aceptada por él como valor de la propiedad mueble no puede después rebajarla caprichosamente, ya que es un principio general que la imposición y determinación de las contribuciones descansa en hechos ciertos y no en teorías, tecnicismos, entradas en los libros de contabilidad o en meras conjeturas. *Loíza Sugar Co.* v. *Domenech*, 44 D.P.R. 556. Si las vacas tenían un valor de $10,300 y se concedió una depreciación de 16 y ⅔ sobre el mismo, este último debió servir de tipo para la deducción concedida por la Junta. No hay prueba de por qué se rebajó. El error nos parece manifiesto y debe corregirse para hacer derecha justicia.''

Estamos conformes con las conclusiones a que llegó la corte inferior, las cuales están sostenidas por la prueba.

*Que la corte sentenciadora erró al declarar nula por inconstitucional la sección 6 de la Ley núm. 18 de 1927; y al declarar que debe ser aplicada en este caso la sección 34(b) de la Ley núm 74 de 1925, y que debe concederse $5,000 de crédito a la demandante.*

Si se resta del ingreso bruto de la sociedad demandante el montante de las deducciones concedídasle por la corte inferior, el ingreso neto tributable resulta ser menos de $10,000.

La sección 34(b) de la Ley núm. 74 de 1925 (pág. 401), antes de ser enmendada, leía así:

"Sección 34.—Para los fines de la contribución impuesta por la sección 28 solamente se concederán los siguientes créditos:

"(b) En el caso de una sociedad o corporación cuyo ingreso neto no exceda de veinte y cinco mil dólares, un crédito específico de $5,000 y en los demás casos, un crédito específico de $4,000.''

La sección 6 de la Ley núm. 18 de junio 3, 1927 (pág. 487), enmendó la sección 34(b), supra, en la forma que sigue:

"En el caso de una sociedad o corporación doméstica cuyo ingreso neto no exceda de diez mil (10,000) dólares, un crédito específico de tres mil (3,000) dólares y en los casos en que el ingreso neto exceda de diez mil (10,000) dólares no se concederá crédito alguno. Las corporaciones o sociedades extranjeras (aun cuando tengan oficina o sitio de negocios en Puerto Rico), no tienen derecho

al crédito de tres mil (3,000) dólares que se concede a las corporaciones y sociedades domésticas.''

La cuestión a decidir es si el crédito que reclama la demandante debe ser computado de acuerdo con la Ley núm. 74 de 1925 o de conformidad con la ley posterior, núm. 18 de 1927.

La corte inferior, basándose en su propia resolución del caso de Francisco López Salgado, civil núm. 16,344, decidido en mayo de 1934, resolvió que la sección 6 de la Ley núm. 18 de junio de 1927 es nula por ser anticonstitucional, y que en consecuencia la ley aplicable al caso es la ley anterior, la de 1925, supra.

Esta misma cuestión fué considerada y resuelta por esta Corte Suprema en *F. Febles y Cía.* v. *Sancho Bonet, Tesorero,* 50 D.P.R. 778, y en *J. M. Blanco, Inc.* v. *Sancho Bonet, Tesorero,* 55 D.P.R. 389, en los cuales se decidió que el apartado (*b*), sección 34 de la Ley núm. 74 de 1925, como quedó enmendado por la Ley núm. 18 de 1927, es anticonstitucional sólo en cuanto no concede crédito alguno en los casos en que el ingreso neto exceda de $10,000, debiendo concederse en tal virtud el crédito de $3,000 que fija dicho estatuto para los contribuyentes cuyos ingresos no excedan de $10,000 también para los contribuyentes cuyos ingresos pasen de esa suma. De acuerdo con lo resuelto en dichos casos la corte inferior erró al resolver que la demandante en este caso tiene derecho a un crédito de $5,000, cuando sólo tiene derecho a $3,000.

En los casos citados se resolvió además que la cuestión sobre la constitucionalidad del estatuto por virtud del cual se cobra la contribución pagada bajo protesta puede ser levantada y resuelta en el recurso de apelación, aun cuando no se suscitara ante la Junta de Revisión e Igualamiento.

La desestimación de los tres señalamientos que hemos discutido debe traer como consecuencia la de los dos últimos.

La corte inferior procedió correctamente al ordenar una reliquidación de las contribuciones sobre ingresos adeudadas por la demandante, y al imponer al demandado el pago de las costas.

*Por las razones expuestas debe modificarse la sentencia recurrida en el sentido de conceder a la demandante un crédito específico de $3,000, y así modificada, confirmarse.*